THE TOWNSHIP OF ROSCOMMON v. THE BOARD OF SUPERVISORS OF MIDLAND COUNTY.

*Mandamus—Answer to order to show cause—Accounts between county and townships set off from it.*

A township which had been set off from a county, and which had a balance to its credit on the books of the county treasurer, sought by mandamus to compel the county board of supervisors to provide for its payment. The board answered, admitting that the balance stood

on the books, but denying liability on the grounds that neither the claim nor the books were correct; that the county had not received all the taxes returned from the township as delinquent; that a large amount of taxes had been charged back; and that a large amount was perpetually enjoined and never collected by a sale of the lands, and these had never been adjusted between the county and township. But the answer contained no statement of definite items reducing the balances, though the means of doing so, if they existed at all, were accessible to the board. *Held* that this answer showed no cause against the writ, and as the balance was admitted, the township might have taken the answer as a practical admission, because as against the county, the books were presumably correct and the board had the burden of showing that they were incorrect.

Comp. L. ch. 226 provides that in mandamus proceedings there may be a trial of certain issues of fact in the county where the facts arose, in the same way as in an action on the case for false returns. *Held* that this relates to cases where a writ of mandamus has been first issued and a return made under which issues of fact or law are framed,—a practice which is not customary in the Supreme Court of Michigan.

The prerogative writ of mandamus is meant to be a speedy and summary remedy whose chief value would be destroyed by the delays and complications of special pleadings, authorized under the practice of alternative or double writs.

Mandamus proceedings in Michigan are begun by an order to show cause, and such issues of fact as are introduced by or under the return are disposed of specifically, not by sending down the entire case on the record but in the same way as are particular issues sent down in chancery cases to be passed on.

Where the Auditor General, as such, pays money into the hands of a county treasurer as county money, the county must be regarded, as against all others than the treasurer, as having received it; and the treasurer is liable on his bond for his own defaults.

If a county remains liable for a balance to a township that has been set off from it, its act in compromising with a defaulting treasurer cannot be treated as an act of agency on behalf of the township and will not relieve it of any share of its liability.

Mandamus.   Submitted Oct. 17.   Decided Oct. 31.

*Edget & Brooks* and *H. H. Woodruff* for relator.

*Stanford & VanKleeck* and *Hanchett & Stark* for respondent.

CAMPBELL, J. Relator asks a *mandamus* to compel respondents to provide for the payment of a balance remaining due on the books of Midland county in favor of relator, which was formerly one of the towns of Midland, as it is now of Roscommon county, which latter county was organized in 1875.

It appears that on the 31st day of January, 1876, a balance was struck on the treasurer's books of Midland in favor of Roscommon township of $6463.54, and that the items out of which this balance was calculated and struck, were ascertained in the usual way, from time to time by the proper authorities of Midland.

On a failure, after demand, to provide for this balance, a *mandamus* was applied for, by a petition which contained all the necessary averments. An order to show cause having been granted, respondent answered, admitting the balance to be standing on the books, but undertaking to avoid its binding force. The character of this showing becomes material, and we find it to be in substance—*first*, a denial that the treasurer's books and showings were correct; *second*, a denial that the county of Midland had received all the taxes returned from Roscommon as delinquent; *third*, a general denial of the correctness of relator's claim; *fourth*, that a large amount of such taxes had been charged back; and *fifth*, that a large amount of the delinquent taxes was perpetually enjoined and never collected by a sale of the lands, and these have never been adjusted between the county and relator.

A replication having been filed a number of questions were sent down to be passed on by a jury, whose findings have been returned without the approval of the circuit judge—a part throwing no light on the controversy, although in his opinion technically correct, so far as they go; and a part answered against the evidence.

Upon looking into the record it is evident that the answer of respondent shows no cause whatever against the writ. The balance of account standing on the county books being admitted, it can only be reduced, if at all, by manifest errors

on the books, or by proof of items wrongly credited or omitted from the charges. All of the items which could possibly be open to such proof or allowance are necessarily to be shown by documentary evidence, most if not all of which must be in respondent's possession, and all of it within reach. All such items are capable of statement with precision, and provable by official books or acts. The burden of showing them is on respondent, whose books are presumably correct as against the county. There is in the answer not only no statement of definite items, but no statement of any sum, large or small, separately or in the aggregate, whereby the balance should be reduced. Such an answer is no answer, and raises no issues on the merits. Relator might have rested on it safely as a practical admission, the book balance being admitted.

But inasmuch as the parties saw fit to go to a hearing before a jury on specified issues, we should not be justified in granting relief, if the proceedings indicated that it would be improper. And here it is necessary to give a moment's attention to those findings and their effect. It is claimed by respondent that trial by jury in those cases is a statutory right, and the verdict is final. This is an error.

The statute referred to is chapter 226 of the Compiled Laws, being 137 of the Revised Statutes. That statute provides for the trial of certain issues of fact in the county where the material facts took place, in the same way as in an action on the case for false returns, and for judgment of damages and costs as in such an action. §§ 7106, 7107.

It will be observed, however, that all of these provisions relate to cases where a writ of *mandamus* has been issued in the first place, and a return has been made to it, under which issues are made of fact or law. This Court has never been in the habit of resorting to that practice, because the prerogative writ of *mandamus* is designed to be a speedy and summary remedy, the chief value of which would be destroyed by the delays and complications of special pleading authorized under the practice of alternative or double writs. We have found it necessary, as our predeces-

sors did, to have the proceeding begun by an order to show cause, and to have such issues of fact as are introduced by or under the return disposed of specifically, in the same way as particular issues sent down in chancery cases to be passed upon, and not by sending the entire case down on the record. See *People ex rel. Anderson v. Township Board of LaGrange* 2 Mich. 187; *People v. Registration Board of Nankin* 15 Mich. 156; *Fletcher Rel. v. Kalamazoo Circuit Judge* 39 Mich. 301.

In the case last cited the Court held the statutory power to fine for contempt such parties as omitted to make return to a writ did not apply where there was only a failure to show cause under an order. And in *Davis Rel. v. Lansing* 31 Mich. 490, the consequence of such a failure was held to be admission of the facts on which the order was based.

The questions submitted to the jury and answered, concerning the balance due relator, were confined to the exact balance in dollars and cents propounded, and the answer given would be compatible with the existence of a balance of a single cent differing from the one alleged. In answering these questions by a single negative the jury paid no attention to the directions of the judge, which required them to find the true amount. The answers to the remaining questions throw no light whatever upon the case.

The questions were not such as required to be submitted to a jury at all. They all related to matter which so far as material at all was open to documentary proof, and the result of the inquest indicates the inefficacy of the whole proceeding.

Looking at the evidence introduced before them, we find the utmost deviation from the results of the book balance would warrant a reduction of $79.21. The circuit judge in his return expresses an opinion that this excess exists, and relator is willing to allow the correction. We do not feel quite sure that any case for reduction was made out, and we are very clear that no foundation was laid for it by the return. But it is entirely proper to make this allowance under the circumstances. If we had any doubt about the facts, or if there had been any testimony tending to prove a larger

allowance proper, we should be disposed to consider whether a further showing might not be permitted. But we find no such testimony; while on the other hand there are facts which tend to show some equities to a larger balance.

The only serious question not already referred to is supposed to arise out of the decrees enjoining certain taxes, and the default of the county treasurer in appropriating moneys received on those taxes from the Auditor General. But it is shown that Midland county suffered nothing from those rejections—the weight of which falls elsewhere. And we find no reason or authority for holding that money paid officially by the Auditor General as county money into the hands of the county treasurer, does not hold the county for its reception. The treasurer was liable on his bond for his own default, but the county must be regarded as having received it as against all others than the treasurer. The compromise made with him for a smaller amount than his defalcation cannot be treated as an act of agency on behalf of relator. When the new county was organized their interests became separated altogether, and the county was a debtor for any actual balance; and this balance could only be changed by errors or payments, or such allowances, if any, as would be legal causes of reduction.

The relator is entitled to a mandamus requiring respondent to provide in the manner required by law for payment of $6384.33 and costs.

The other Justices concurred.